UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JUSTIN MOORE,

                               Plaintiff,                Case No.:
                                                             20-cv-4039

  -against-


LIVERAMP, INC. a/k/a                              **COMPLAINT**
LIVERAMP HOLDINGS, INC., and
ERIC RUSH, individually,

                                                               Plaintiff Demands a
                           Defendants.            Trial by Jury

-----------------------------------------------------------X

Plaintiff JUSTIN MOORE by and through his attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants LIVERAMP, INC., LIVERAMP HOLDINGS, INC. (referred to as "Defendants,") upon information and belief as follows:

### NATURE OF CASE

Plaintiff, JUSTIN MOORE, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981 ("Section 1981"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia, being discriminated against by his employer on the basis of his race and color, together with being subjected to a hostile work environment and retaliation.*

### JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question

under Title VII and 42 U.S.C. §1981.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. On or about October 22, 2019, Plaintiff JUSTIN MOORE submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2020-00465.

4. On or about February 28, 2020, Plaintiff JUSTIN MOORE received a Right to Sue Letter from the EEOC for federal charge number 520-2020-00465.

5. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

6. Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7. Plaintiff is an individual African-American male who is a resident of the State of New York, New York County.

8. At all times material, Defendant LIVERAMP, INC. (hereinafter referred to as "LIVERAMP" and/or "Defendant") is a foreign business corporation duly existing by the virtue and laws of the State of California that does business in the State of New York.

9. At all times material, Defendant LIVERAMP HOLDINGS, INC. (hereinafter together with Defendant LiveRamp, Inc. referred to as "LIVERAMP" and/or "Defendant") is a foreign business corporation duly existing by the virtue and laws of the State of California that does business in the State of New York.

10. The claims articulated herein arise out of the business Defendant transacts in New York

County, New York.

11. At all times material, Defendant ERIC RUSH (hereinafter referred to as "RUSH" and/or "Defendant" and/or "Defendant RUSH") was a supervisor at LIVERAMP who held the title, Senior Delivery Manager 1. RUSH held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. RUSH held the power to hire and fire Plaintiff.

12. At all times material, CATHY AN (hereinafter referred to as "AN") was a supervisor at LIVERAMP who held the title, Senior Delivery Manager 1. CATHY held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. CATHY held the power to hire and fire Plaintiff.

13. At all times material, NADINE OTT (hereinafter referred to as "OTT") was a supervisor at LIVERAMP who held the title, Director of Product Operations, Technology. OTT held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. OTT held the power to hire and fire Plaintiff.

**STATEMENT OF FACT**

14. Around October 29, 2018, Defendant hired Plaintiff as a Product Operations Manager in their New York City office.

15. On or about October 29, 2018, Plaintiff reported to his first day of work where he was scheduled to meet with Defendant's manager RUSH, who would be Plaintiff's direct supervisor at a coffee shop in the office building. Plaintiff recognized RUSH from a picture in a company email and approached him to greet him. RUSH was immediately taken aback by Plaintiff's race and skin color and refused to reciprocate the handshake that Plaintiff offered him as a greeting.

16. RUSH refused to accept that Plaintiff was in fact the new hire he was scheduled to meet. He inquired about Plaintiff's Harvard education by incredulously asking, "HOW DID THAT

HAPPEN?!"

17. Defendant RUSH only asked this question because Plaintiff is African-American and because of the color Plaintiff's skin.

18. RUSH continued to ask Plaintiff condescending and racially coded questions like, "HAVE YOU [Plaintiff] EVER BEEN ON A PLANE BEFORE?" "HAVE YOU [Plaintiff] EVER SEEN SNOW BEFORE?"

19. Defendant RUSH only asked these questions because Plaintiff is African-American and because of the color Plaintiff's skin.

20. After this series on unprofessional, condescending and intentionally humiliating questions, that were obviously based entirely on Plaintiff's race and the color of Plaintiff's skin, Defendant RUSH stared at Plaintiff with a look of horror on RUSH's face as he finally accepted that Plaintiff was the new Product Operations Manager that was scheduled to start that day.

21. Plaintiff was the only African-American employee who worked under Defendant RUSH's supervision.

22. Around October 31, 2018, Plaintiff attended a meeting with Defendant's Director of Product Operations OTT, Defendant RUSH and Defendant's Senior Delivery Manager STEPHEN FROST (hereinafter referred to as "FROST"). During the meeting Plaintiff heard RUSH and FROST making jokes about Plaintiff's race and skin color such as, "IT'S GETTING DARK IN HERE" while laughing and giggling.

23. Shocked and appalled, Plaintiff asked what their jokes meant and OTT responded, "THEY [Defendant RUSH and FROST] ARE TELLING YOU THAT YOU DO NOT BELONG HERE."

24. Around November 1, 2018, Plaintiff had a follow up meeting with OTT during Plaintiff asked, "so what did all those jokes mean?" to which OTT responded, "OH ERIC AND STEPHEN WERE

JUST LETTING YOU KNOW THAT YOU DIDN'T BELONG."

25. Around December 2018, Defendant's Manager RUSH requested that Plaintiff begin having an extra weekly meeting with him so that he could "check in" which was not required of any other Product Operations Manager under his supervision.

26. No non-African American employee was required to attend extra weekly meetings with Defendant's supervisors during the relevant period.

27. Around December 2018, Plaintiff attended Defendant's Christmas party in their San Francisco Office. Plaintiff noticed that his coworkers were actively avoiding the few African American employees at the party.

28. During the party Plaintiff overheard two of Defendant's managers, ANALECIA SMITH and ARTUR YAKUBOV, laughing about how that they could discriminate against people at LiveRamp as long as they didn't make it too obvious.

29. Around April 2019, Plaintiff attended a team meeting where Defendant's Product Operation Managers, ALISON KLINE (hereinafter referred to as "KLINE"), spoke about what she learned form a diversity session she attended at the Google Next conference on April 9, 2019. KLINE said, "WE SHOULDN'T ALWAYS AUTOMATICALLY THINK SOMEONE IS INCOMPETENT JUST BECAUSE HE IS A BLACK MAN OR THAT HE GOT HIS JOB BECAUSE OF AFFIRMATIVE ACTION."

30. As the only African American male Productions operations manager on his team Plaintiff was taken aback and humiliated by KLINE's statement.

31. Around April 18, 2019, Defendant's Product Operations Manager MEGAN PERLEY (hereinafter referred to as "PERLEY") was standing in between the kitchen area and the desks in Defendant's New York City office and said that, "ALL THE WHITE POs [Product Operation

Managers] SHOULD SIT TOGETHER."

32. Around May 2019, Plaintiff repeatedly complained to RUSH about disrespectful and abusive conduct that Plaintiff was being subjected to by Defendant's Product Operations Manager Courtney Tabellione (hereinafter referred to as "TABELLIONE"). RUSH minimized and dismissed Plaintiff's complaint about TABELLIONE.

33. Around May 8, 2019 Plaintiff's coworker, Jessica Klein, unsolicited, while walking from Defendant's NYC headquarters to attend a team outing, and in the presence of another coworker, Dana Sheets, approached Plaintiff and informed Plaintiff that Ms. Klein believed Defendant RUSH was targeting Plaintiff for unfair and unduly harsh treatment because of Plaintiff's race.

34. Around May 24, 2019, after Plaintiff's continued complaints, Defendant RUSH told Plaintiff that if he had any evidence that TABELLIONE's conduct was intentional it would be seen as "A VERY SERIOUS OFFENCE OF LIVERAMP'S RULES AND POLICIES."

35. RUSH took no action to investigate Plaintiff's complaints against TABELLIONE.

36. Around May 28, 2019, RUSH told Plaintiff that he was "SPOOKY," "SCARY" and "FRIGHTENING" to the sales team and that Plaintiff's appearance made them feel uncomfortable. When Plaintiff asked for explanation of how and why that was the case RUSH replied dismissively, "IT IS WHAT IT IS. I'LL THINK ABOUT IT AND GET BACK TO YOU."

37. RUSH failed to ever provide any explanation as to why he told Plaintiff that other team member purportedly viewed Plaintiff as "SPOOKY," "SCARY" or "FRIGHTENING."

38. Plaintiff was the only African-American team member.

39. No other team members were ever accused of being "SPOOKY," "SCARY" or "FRIGHTENING."

40. Around May 29, 2019, Plaintiff brought Defendant's Human Resources Manager Analecia

Smith (hereinafter referred to as "SMITH") to meet with RUSH to provide evidence regarding TALLIBONE's conduct in the office.

41. Following their discussion Plaintiff had a one on one meeting with Defendant RUSH where he was told, "I HEAR WHAT YOU AND ANALECIA ARE SAYING, BUT I WILL STILL TAKE NO ACTION AGAINST COURTNEY. DESPITE WHAT COURTNEY'S DONE TO YOU, SHE'S TOLD ME DIFFERENTLY."

42. Plaintiff responded, "Differently? You said you needed evidence that she is intentionally and willfully abusive and I have given it to you. So now you are telling me that evidence doesn't matter and that Courtney's actions against me do not matter, only what she tells you."

43. Defendant RUSH nodded and replied, "NO ONE WILL BELIEVE YOU. JUST LOOK AT YOU. EVERYTHING I DO WILL BE REGARDED AS FAIR.

44. Around May 29, 2019, Defendant's Manager RUSH instructed Plaintiff that he was to adhere to a response time of 24 hours when responding to any and all internal communications and that in the event Plaintiff failed to respond within 24 hours, he was to apologize for it.

45. No non-African American employees were required to respond to any and all internal communications within 24 hours

46. No non-African American employees were required to apologize for not responding to emails within 24 hours.

47. Defendant does not have any written policy that emails must receive a response within 24 hours.

48. This policy was created by Defendant RUSH and only enforced upon Plaintiff.

49. Plaintiff was the only African American under Defendant RUSH's supervision.

50. Defendant RUSH's 24-hour email response deadline policy was intentionally designed to

target, intimidate and humiliate Plaintiff because of his race and because Plaintiff complained of discriminatory treatment.

51. On May 31, 2019, Plaintiff asked Defendant RUSH to provide him with documentation outlining this response policy.

52. Defendant RUSH responded by telling Plaintiff that, "IT [the policy] IS NOT WRITTEN DOWN ANYWHERE; WE HAVE NOT NEEDED TO HAVE IT WRITTEN SO FAR. … JUST SOMETHING WE NEED TO RETUNE YOUR INTUITIONS ON."

53. Plaintiff was the sole product operations manager that was subjected to this rule by RUSH.

54. Around June 2019, Plaintiff submitted a request for two weeks paid vacation. Defendant's company policy allows employees to have unlimited paid time off.

55. Product Operations Managers are recommended by Defendant to take at least one week of vacation per quarter and have the option to combine weeks from multiple quarters to take bigger trips.

56. Plaintiff had not taken a vacation during the two previous quarters and was eligible to take at least two weeks of vacation.

57. Around June 7, 2019, Defendant RUSH informed Plaintiff that his request for two weeks of vacation had been denied.

58. In his denial of Plaintiffs request Defendant RUSH cited "CONCERNS WITH HOW YOU [Plaintiff] APPROACH ELEMENTS OF YOUR WORK," despite the fact that Plaintiff was an employee who received compliments on his work product from a number of the Defendant's employees including Defendant's President Anneka Gupta and Defendant's Head of Technical Services Neil Madsen.

59. While Plaintiff was employed with Defendant, Plaintiff was never issued any writeup, warning

letter or any other formal disciplinary action regarding his work.

60. On or about June 10, 2019, Plaintiff sent emailed a formal complaint to ALYS MATTHERWS (hereinafter referred to as "MATTHEWS") a member of Defendant's Human Resources Department regarding the discriminatory treatment that he was being subjected to by Defendant RUSH.

61. Around July 2019, in retaliation for Plaintiff's complaints regarding Defendant RUSH, Defendant RUSH took over all accounts that were previously assigned to Plaintiff.

62. Around July, 2019 Plaintiff was placed on leave while Defendant told Plaintiff that they would investigate his complaints.

63. Defendant purported to "investigate" Plaintiff's complaints of discriminatory treatment, however, instead of actually investigating and taking corrective action in response Plaintiff's complaints, Defendant engaged in a campaign to intimidate and silence witnesses, including Ms. Klein who, unprompted, came forward to tell Plaintiff that the racial discrimination he was experiencing was "**so obvious**."

64. Defendant through their manager, Defendant RUSH engaged in a pattern of targeted racially discriminatory disparate treatment of Plaintiff for the duration of Plaintiff's employment with Defendant.

65. Plaintiff provided detailed statements as well as numerous pieces of documentary evidence and audio recordings that indisputably substantiate his complaints of racist treatment to Defendants.

66. Despite this hard, tangible evidence that clearly showed racial bias that was openly recognized by Plaintiff's coworkers, Defendant actively worked to minimize and disregard evidence of racial bias and discrimination in the workplace.

67. Defendant refused to take any remedial action in response to Plaintiff's complaints of race discrimination and demanded Plaintiff immediately return to work under threat of termination.

68. Defendant intentionally and willfully disregarded specific and detailed Plaintiff's complaints of workplace racism.

69. Defendant intentionally and willfully ignored ample clear evidence provided to them corroborating Plaintiff's complaints of racism in the workplace.

70. Plaintiff expressed hesitation and became extremely emotionally distressed at the prospect of being forced to return to a workplace rife with blatant and obvious race discrimination after Defendant willfully and intentionally disregarded and ignored clear and convincing evidence corroborating Plaintiffs complaints of race discrimination.

71. Around August 30, 2019 instead of taking substantive measures to investigate and correct the racism that Defendant RUSH and other employees engaged in against Plaintiff, Defendant terminated Plaintiff's employment because of Plaintiff's race and in retaliation for his complaints of race discrimination.

72. Defendant discriminated and retaliated against Plaintiff because of his race and skin color, and because he complained of and opposed the unlawful conduct of Defendant related to the above protected classes.

73. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

74. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including, but not limited to, anxiety, depression, weight gain and sleeplessness.

75. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured

unwarranted financial hardships and irreparable damage to his professional reputation.

76. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

77. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

78. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

79. Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

80. Defendant's conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION
DISCRIMINATION UNDER TITLE VII
<u>(Not Against Individual Defendant)</u>**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

Title VII states in relevant part as follows:

> "(a) Employer practices:
> 
> It shall be an unlawful employment practice for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

82. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender.

83. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex and gender.

**AS A SECOND CAUSE OF ACTION FOR
RETALIATION UNDER TITLE VII
(Not Against Individual Defendant)**

84. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

85. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

86. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

### AS A THIRD CAUSE OF ACTION
### DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
### (Against All Defendants)

88. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

89. 42 U.S.C. §1981 states as follows:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

90. Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

91. Defendants discrimination against Plaintiff in violation of the rights of Plaintiff as afforded to him by the Civil Right Act of 1866, 42 U.S.C. §1981.

92. By the conduct described above, Defendants intentionally deprived Plaintiff, of the same rights as are enjoyed by both other Caucasian and non-Black citizens, to the creation, performance, enjoyment and all benefits and privileges of their employment relationship with Defendants.

93. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied

employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling them to compensatory damages.

94. Defendants violated 42 U.S.C. §1981 by both discriminating against Plaintiff because he is African American and because he opposed the above described discriminatory behavior.

95. Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling him to an award of punitive damages.

96. To remedy the violations of the rights of each individual Plaintiff secured by Section 1981, Plaintiff requests that the Court award the relief prayed for below.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (Against All Defendant)

97. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

98. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

99. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff

because of her sex/gender and by creating a hostile work environment.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

100. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

101. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

102. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

103. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

104. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

105. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

106. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

107. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

108. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her sex/gender.

### AS A EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

109. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

110. The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…."

111. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiffs' employer.

### AS AN NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

112. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

113. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

114. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A TENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

115. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

116. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or

enjoyment of, any right granted or protected pursuant to this section."

117. Defendants violated the above section as set forth herein.

## AS A ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

118. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

119. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

120. Defendants violated the above section as set forth herein.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees,

costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
May 26, 2020

                                                      Respectfully Submitted,
                                                     **DEREK SMITH LAW GROUP, PLLC.**
                                                     Attorneys for Plaintiff

BY:
                                                     **/s/ Seamus Barrett**
                                                   Seamus Barrett, Esq.
                                                   1 Pennsylvania Plaza, 49th Floor
                                                   New York, New York 10119
                                                   (212) 587-0760